IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**NATHANIEL GAINES**                                                                   **PLAINTIFF**

v.                                                            CIV NO.   2:22-cv-00042-KS-MTP

**JEFFERSON COUNTY SCHOOL**
**DISTRICT; ADRIAN HAMMITTE;**                                    **DEFENDANTS**
**and, SHAMEKA WOODS**                                         **(JURY TRIAL DEMANDED)**

## COMPLAINT

COMES NOW, Nathaniel Gaines, ("Plaintiff"), by and through counsel of record and alleges as follows.

### JURISDICTION, VENUE, AND JURY DEMAND

1. Jurisdiction is proper in this Court per 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, including Title VII of the Civil Rights Act of 1965 (Title VII) and 42 U.S.C. § 1983.

2. Venue is proper in this Court per 28 U.S.C. § 1391(b)(2) because the events giving rise to this claim occurred in Jefferson County, Mississippi.

3. Plaintiff respectfully demands a jury trial on all issues so triable.

### PARTIES

4. Defendant Jefferson County School District ("JCSD") is an "employer" as defined by Title VII of the Civil Rights Act of 1964 (Title VII). JCSD is sued for all counts of this complaint.

5. Defendant Adrian Hammitte is the interim superintendent of JCSD. The JCSD school board gave Dr. Hammitte authority to terminate Plaintiff's employment, and Dr.

Hammitte did in fact terminate Plaintiff's employment and/or effectively recommend termination.

6. Dr. Hammitte is sued in both his individual and official capacities. He is sued solely under Count 3, 1983/First Amendment retaliation.

7. Defendant Shameka Woods is the principal of Jefferson County Elementary School and Plaintiff's former supervisor. She effectively recommended Plaintiff's termination from employment.

8. Ms. Woods is sued in her individual capacity. She is sued solely under Count 3, 1983/First Amendment retaliation.

9. Plaintiff Nathaniel Gaines is an adult resident of Mississippi.

10. Mr. Gaines is African-American.

11. Mr. Gaines is a man.

12. Mr. Gaines is heterosexual.

13. Mr. Gaines is a former "employee" of JCSD as defined by Title VII.

## ADMINISTRATIVE EXHAUSTION AND TIMELINESS

14. Mr. Gaines outlined the facts described below in a charge filed with the Equal Employment Opportunity Commission on September 28, 2021.

15. Mr. Gaines thus timely exhausted administrative remedies by filing a charge.

16. The EEOC issued a "Right to Sue" letter which was signed on January 10, 2022. *Exhibit 1*.

17. This Complaint is being timely filed within 90 days of receipt of this notice, thus complying with the timeliness requirements of Title VII.

## FACTS

18. Plaintiff's work for JCSD began on or about January 12, 2010.

19. Plaintiff started work for JCSD as a substitute teacher.

20. On or about August 18, 2020, JCSD hired Plaintiff as a non-certified interventionist.

21. Plaintiff received his teaching license in January 2021.

22. Between March 2021 and the end of June 2021, Mr. Gaines applied for twelve certified teaching positions with JCSD.

23. JCSD rejected Mr. Gaines for all of these positions.

24. In or around April 2021, JCSD's athletic director, Delvin Thompson, offered Mr. Gaines a coaching position.

25. This coaching position was for a term of one-year.

26. This coaching position paid $2,000 a month.

27. On or around May 21, 2021, Mr. Gaines contacted Mr. Thompson and asked about the status of his offer.

28. Mr. Thompson informed Mr. Gaines that the JCSD interim superintendent, Adrian Hammitte, still needed to recommend Mr. Gaines's hiring to the JCSD school board.

29. Dr. Hammitte delayed recommending Mr. Gaines's hiring until June 2021.

30. On information and belief, Dr. Hammitte delayed in an attempt to hire Christian Brown for the coaching position.

31. In June 2021, Dr. Hammitte finally recommended Mr. Gaines's hiring to the school board.

32. Around the time of Mr. Gaines's hiring, Dr. Hammitte told Mr. Gaines that he would try to find Mr. Gaines a certified teaching position.

33. Because he preferred a certified teaching position, Mr. Gaines did not accept the coaching position.

34. Mr. Gaines applied for several more certified teaching positions with JCSD.

35. JCSD rejected Mr. Gaines for all of these positions.

36. During the summer of 2021, Mr. Gaines repeatedly asked to meet with Dr. Hammitte to discuss his employment.

37. Mr. Gaines repeatedly asked Dr. Hammitte why his applications for certified teaching positions were denied.

38. Dr. Hammitte never explained why JCSD was denying Mr. Gaines's applications for certified teaching positions.

39. On information and belief, JCSD hired women for most of the certified teaching positions for which Mr. Gaines applied.

40. On information and belief, JCSD hired homosexual men for other certified teaching positions for which Mr. Gaines applied.

41. On information and belief, JCSD rejected Mr. Gaines's applications for these certified teaching positions because of his sex.

42. In one instance, one of Mr. Gaines's female colleagues was hired for a certified math teacher position for which Mr. Gaines had applied.

43. This female colleague was also an interventionist.

44. This female colleague was not certified to teach math.

45. JCSD rejected Mr. Gaines for this position because of Mr. Gaines's sex.

46. In response to these repeated rejections, Mr. Gaines repeatedly reported Dr. Hammitte and Shameka Woods, the principal of Jefferson County Elementary School.

47. In these reports, Mr. Gaines alleged that JCSD was rejecting his applications because of his sex.

48. On information and belief, JCSD never took any action to remedy this sex discrimination.

49. On August 14, 2021, Mr. Gaines posted a statement on Facebook. See *Exhibit 2*.

50. In this statement, Mr. Gaines expressed his belief that the employees of Jefferson County were being "under paid & unappreciated." *Id*.

51. Mr. Gaines expressed his belief that Jefferson County was treating its employees poorly. *Id*.

52. With this statement, Mr. Gaines was speaking as a private citizen on a matter of public concern.

53. His post was shared by others in the context of an ongoing public debate.

54. Four days later, on August 18, 2021, Ms. Woods recommended that Dr. Hammitte terminate Mr. Gaines. *Exhibit 3*.

55. In this letter, Ms. Woods claimed that Mr. Gaines should be terminated for failing to follow school policy. *Id*.

56. Two days later, on August 20, 2021, Mr. Gaines received a termination letter. *Exhibit 4*.

57. This termination letter accused Mr. Gaines of failing to follow school policy. *Id*.

58. This termination letter also accused Mr. Gaines of failing to follow the Mississippi Educator Code of Ethics and Standards of Conduct. *Id*.

59. Mr. Gaines did not violate the Mississippi Educator Code of Ethics and Standards of Conduct.

60. Mr. Gaines called Dr. Hammitte to discuss his termination.

61. Dr. Hammitte told Mr. Gaines that he was terminated, in part, for not executing his coaching contract.

62. JCSD has no policy concerning the execution of coaching contracts.

63. Dr. Hammitte told Mr. Gaines that he was terminated, in part, for violating the school's cell phone use policy.

64. JCSD's cell phone use policy states: "No staff shall use cell phones while teaching, instructing, or supervising students." *Exhibit 5*.

65. Mr. Gaines did not use his cell phone while teaching, instructing, or supervising students.

66. Mr. Gaines did not violate JCSD's cell phone use policy.

67. JCSD failed to follow its progressive discipline system concerning Mr. Gaines's alleged violation of the cell phone use policy.

68. Dr. Hammitte told Mr. Gaines that he was terminated, in part, for his Facebook post.

69. JCSD terminated Mr. Gaines because of his sex.

70. JCSD terminated Mr. Gaines because of his opposition to unlawful discrimination.

71. JCSD terminated Mr. Gaines because of his protected speech activity.

## CAUSES OF ACTION

**COUNT I: Sex Discrimination Under Title VII**

72. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

73. JCSD refused to hire Mr. Gaines to a certified teaching position because of Mr. Gaines's sex.

74. JCSD terminated Mr. Gaines from his interventionist position because of Mr. Gaines's sex.

75. Through this sex discrimination, JCSD violated Title VII.

76. In doing so, JCSD harmed Mr. Gaines.

**COUNT II: Retaliation Under Title VII**

77. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

78. Mr. Gaines opposed JCSD's unlawful sex discrimmination.

79. JCSD terminated Mr. Gaines from his interventionist position because of this opposition.

80. Through this retaliation, JCSD violated Title VII.

81. In doing so, JCSD harmed Mr. Gaines.

**COUNT III: First Amendment Retaliation Under 42 U.S.C. § 1983**

82. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

83. The First Amendment to the United States Constitution prohibits government retaliation for protected speech activity.

84. Mr. Gaines engaged in protected speech activity by speaking as a private citizen on a matter of public concern.

85. JCSD terminated Mr. Gaines for this protected speech activity.

86. Through this retaliation, JCSD violated the First Amendment of the United States Constitution.

87. In doing so, JCSD harmed Mr. Gaines.

**COUNT IV: Breach of Contract**

88. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

89. Defendant and Plaintiff had a valid and enforceable employment agreement.

90. This agreement included actual and/or constructive covenants by the Defendant that it would act in good faith, that it would comply with its own publicly adopted Board policies, and that it would comply with Mississippi and Federal law.

91. Defendant breached this agreement by failing to give Plaintiff fair consideration for job openings, by disciplining him without following the progressive discipline policy, and by terminating his employment in bad faith in violation of these covenants.

92. In doing so, JCSD harmed Mr. Gaines.

## REMEDIES

Wherefore, Plaintiff requests that this honorable Court award him all available relief, including the following:

   a. Front pay and/or reinstatement, as appropriate;
   b. Back pay;
   c. Lost employment benefits;
   d. Consequential damages for any other pecuniary harms flowing from Defendant's unlawful conduct;
   e. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful conduct;
   f. Punitive damages commensurate with Defendant's misconduct and necessary to deter it from violating the law in the future;
   g. Pre-judgment interest;
   h. Post-judgment interest;
   i. Attorney fees;
   j. Costs;
   k. An injunction curing Defendant's unlawful conduct and prohibiting it from engaging in any similar misconduct in the future;

l.  Notice given to all employees regarding the violations found by this Court and notifying such employees of their legal rights and the order entered proscribing any similars misconduct in the future;

m. A final judgment declaring Defendant violated the law as described above;

n. And, any other relief available under any applicable principle in law or equity.

Respectfully submitted on April 5, 2022,

NATHANIEL GAINES, Plaintiff

/s/ Joel Dillard
Joel F. Dillard (MSB No. 104202)
Jay Kucia (MSB No. 106213)
*Counsel for Plaintiff*

OF COUNSEL:

JOEL F. DILLARD, P.A.
775 N. Congress St.
Jackson, MS 39202
Telephone: 601-509-1372 (Ext. 2, Joel) (Ext. 1, Jay)
Facsimile: 601-509-1372
Emails: joel@joeldillard.com (Joel)
jay@joeldillard.com (Jay)

9